Clinton Salt BROWN, Plaintiff,

v.

**PENSION BENEFIT GUARANTEE CORPORATION, Defendant.**

Civ. A. No. 92–2098 (CRR).

United States District Court,
District of Columbia.

May 12, 1993.

Theodore W. Hirsh, Edward J. Adkins and Ann M. Sheridan of Miles and Stockbridge, Baltimore, MD, Olav B. Kollevoll, Jr. and Richard W. Bowe of Miles and Stockbridge, Washington, DC, for plaintiff.

Carol Connor Flowe, Jeffrey B. Cohen, Peter H. Gould and Holli Beckerman Jaffe of the Office of Gen. Counsel of the Pension Ben. Guarantee Corp., Washington, DC, for defendant.

### OPINION

CHARLES R. RICHEY, District Judge.

Before the Court are the parties' Cross Motions for Summary Judgment. The Plaintiff, a participant in a guaranteed pension plan assumed by the Defendant Pension Benefit Guarantee Corporation (PBGC), brought this action challenging PBGC's denial of his pension benefits. The question before the Court is whether the Defendant's interpretation of provisions in the Employee Retirement Income Security Act (ERISA) restricting pension benefit guarantees for "substantial owners" is erroneous. *See* 29 U.S.C. § 1322(b)(5).

The Plaintiff alleges that PBGC's administrative determination denying him guaranteed benefits is an erroneous interpretation of the substantial owner restrictions con-

tained in ERISA. *See id.* The Defendant contends that its denial of the Plaintiff's guaranteed benefits is consistent with Congress' intention to substantially restrict the benefit guarantees of substantial owners and that its administrative interpretation of ERISA's restrictions are reasonable. *See* Defendant's Memorandum at 15–16.

After careful consideration of the parties' motions, the Agreed Statement of Facts, the supporting and opposing memoranda, and the applicable law, the Court concludes that the plain language and legislative history of the statute support the Defendant's interpretation of ERISA's substantial owner restrictions, and therefore, the Court shall, pursuant to Rule 56 of the Federal Rules of Civil Procedure, deny the Plaintiff's Motion for Summary Judgment, and grant the Defendant's Motion for Summary Judgment.

## I. BACKGROUND

In 1974, Congress passed the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, in order "that minimum standards be provided to assur[e] the equitable character of [pension] plans and their financial soundness." *See* 29 U.S.C. § 1001(a).[1] For nearly twenty-eight years, the Plaintiff was an employee of the National Manufacturing Corporation (National) and was a participant in its pension plan from the plan's inception in 1957 until National's dissolution in 1980. In addition, the Plaintiff was a "substantial owner" of National throughout the relevant term of his employment with the company, that is, one who owned at least 10% of the company's stock. *See* Agreed Statement of Facts at ¶ 8; *see also* 29 U.S.C. § 1322(b)(5)(A) (defining substantial owner).

When National dissolved in 1980, its pension plan was deemed by the Defendant to be under-funded and proceedings were initiated for PBGC to assume the plan.[2]

National's pension plan, known as the National Manufacturing Corporation Retirement Income Plan for Salaried Employees (the Plan), while first implemented in 1957, was expanded and amended thirteen times before the company's dissolution in 1980. *See* Agreed Statement of Facts at ¶ 11. The original Plan provided that an employee who had worked for National for at least fifteen (15) years and who retired after October 1, 1957, was eligible to receive benefits upon retirement so long as (a) the participant had reached his or her sixtieth birthday at the time of retirement; or (b) they had reached their fifty-fifth birthday at the time of retirement and were totally and permanently disabled. *Id.* at ¶ 12. Under the original Plan, there was to be no vesting of benefits until the participant reached the stated age of retirement. *Id.* Therefore, if the Plan had not been amended, the Plaintiff here would not be entitled to any guaranteed benefits, as ERISA only guarantees benefits that have vested at the time of a Plan's termination. *See* 29 U.S.C. § 1322(a).

However, accelerated vesting provisions were incorporated into the Plan by several amendments. In particular, a "restatement" of the Plan adopted in 1976 allowed for earlier vesting of benefits in order to bring the Plan in line with the early vesting provisions of ERISA.[3] Thus, at the time of the Plan's dissolution in 1980, the Plaintiff's normal retirement benefits were vested and nonforfeitable under the terms of the amended Plan,

---

**1.** In his Complaint, the Plaintiff alleges that he is entitled to additional benefits under the settlement of *Piech v. Pension Benefit Guarantee Corporation*, 744 F.2d 156 (D.C.Cir.1989), a class action suit brought against the Defendant. *See* Complaint at ¶ 16. As the Defendant has conceded the application of this settlement agreement to the Plaintiff, the Court shall not address the merits of this portion of the Complaint. *See* Pl.'s Mem. in Support of Summ.J. at n. 7.

**2.** ERISA establishes mechanisms under which PBGC assumes an under-funded pension plan. *See* 29 U.S.C. § 1341. In accordance with the terms of the statute, the Defendant assumed Na-

tional's pension plan on October 13, 1983. *See id.*; Agreed Statement of Facts at ¶ 15.

**3.** The 1976 Plan Amendment adopted a ten year schedule for full vesting of pension benefits, in accord with ERISA's accelerated vesting provisions. *See* Agreed Statement of Facts at ¶ 13; *see also* 29 U.S.C. § 1053(a) (stating minimum vesting standards). This accelerated vesting schedule was adopted by Congress in recognition of the fact that "many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans." 29 U.S.C. § 1001(a).

even though he had yet to reach the established age of retirement.[4] However, as a substantial owner, the guaranteed benefits available to the Plaintiff are restricted by ERISA. *See* 29 U.S.C. § 1322(b)(5). The issue for resolution in this case is the scope of ERISA's substantial owner restrictions.

## II. DISCUSSION

### A. AS A SUBSTANTIAL OWNER, THE PLAINTIFF'S VESTED BENEFITS UNDER AN ASSUMED PENSION PLAN ARE SIGNIFICANTLY LIMITED.

ERISA defines a substantial owner as "an individual who ... in the case of a corporation, owns directly or indirectly, more than 10 percent in value of either the voting stock of that corporation or all the stock of that corporation." 29 U.S.C. § 1322(b)(5)(A). ERISA provides several limitations upon the pension benefits of a substantial owner that are available under a plan assumed by the government. These restrictions are differentiated according to whether or not the benefits available. under a plan had been increased as a result of any plan amendment.

If an assumed pension plan has not been amended, the guaranteed benefits a substantial owner receives are directly related and proportional to the number of years the owner participated in the plan. More specifically, ERISA provides a thirty-year phase-in provision for substantial owner's benefit guarantees, multiplying the owner's vested monthly benefits by a fraction equal to (x/30),

with (x) being the number of years the substantial owner participated in the plan.[5] *See* 29 U.S.C. § 1322(b)(5)(B). For example, if a substantial owner participated in a pension plan for twenty years and the vested benefits available to him under the terms of the original plan were $100, his guaranteed benefit under § 1322(b)(5)(B) would be $100 times 20/30 or $66.66.

If, on the other hand, the assumed plan had been amended, ERISA restrictions mandate that the Defendant "shall, under regulations proscribed by the corporation [PBGC], treat each benefit increase attributable to a plan amendment as if it were provided under a new plan." 29 U.S.C. § 1322(b)(5)(C). Regulations promulgated by the Defendant under this statute mandate that any increase in benefits conferred as a result of amendment to a plan be subject to a separate 30 year phase in provision.[6] *See* 29 C.F.R. § 2621.7(c). Therefore, for example, if an assumed plan had been amended ten years before its termination to provide for a further benefit of $100, the guaranteed benefit under this amendment would be $100 times 10/30 or $33.33.

In addition to the thirty-year phase in provisions applicable to a substantial owner's plan amendment increases, ERISA places a cap on the guarantee of increases available under plan amendments. The statute provides that "[t]he benefits guaranteed under this section with respect to all such [plan] amendments shall not exceed the amount which would be determined under subpara-

---

**4.** ERISA's benefit guarantee provisions cover all pension benefits deemed "nonforfeitable" at the time of a plan's dissolution. 29 U.S.C. § 1322(a). A nonforfeitable benefit is defined by regulation as "a benefit payable with respect to a participant ... if on the date of termination of the plan the participant has satisfied all of the conditions required of him under provisions of the plan to establish entitlement to the benefit." 29 C.F.R. § 2613.6(a). The Supreme Court has stated that under ERISA, the terms "nonforfeitable" and "vested" are used synonymously. *See Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 376–78, 100 S.Ct. 1723, 1733–34, 64 L.Ed.2d 354 (1980).

**5.** The statutory language restricting a substantial owner's benefits under an *unamended* pension plan provides that:

(B) In the case of a participant in a plan under which benefits have not been increased by reason of any plan amendments and which is covered by the plan as a substantial owner, the amount of benefits guaranteed under this section shall not exceed the product of—

(i) a fraction (not to exceed 1) the numerator of which is the number of years the substantial owner was an active participant in the plan, and the denominator of which is 30, and

(ii) the amount of the substantial owner's monthly benefits guaranteed under subsection (a) (as limited by paragraph (3) of this subsection).

29 U.S.C. § 1322(b)(5)(B).

**6.** This thirty-year phase-in provision is similar to the provision that applies to an unamended plan under 29 U.S.C. § 1322(b)(5)(C).

graph (B) if subparagraph (B) applied." [7] *See* 29 U.S.C. § 1322(b)(5)(C). It is this cap on a substantial owner's guaranteed pension benefits that is at issue in this case.

## B. THE DEFENDANT'S DENIAL OF BENEFITS TO THE PLAINTIFF IS CONSISTENT WITH CONGRESS' CLEAR INTENT TO RESTRICT THE BENEFITS OF SUBSTANTIAL OWNERS UNDER ERISA.

■ In reviewing PBGC's construction of ERISA, the Court must first ascertain whether Congress had a particular intent as to the meaning of the phrase or provision at issue. *See Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694. "If the intent of Congress is clear, that is the end of the matter for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. If, on the other hand, the intent of Congress as to the particular phrase or provision is ambiguous, "the question for the Court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

■ The Defendant has interpreted ERISA's cap placed on a substantial owner's benefits as limiting the benefits guaranteed by virtue of any plan amendments to the amount of benefits available to a claimant under the original plan. For example, a plan beneficiary who receives $100 a month by virtue of the original plan cannot receive more than a additional $100 a month by virtue of any additional plan increase.[8] Therefore, under the Defendant's interpretation of ERISA's substantial owner restrictions, because the Plaintiff was entitled to nothing under his original Plan,[9] he is not entitled to any guaranteed benefits under the Plan amendments. The Court concludes that the Defendant's interpretation is consistent with the clear language of the statute and the legislative history. Therefore, the Court will uphold the Defendant's interpretation.

1. **Because the legislative history of ERISA indicates a Congressional intent to significantly restrict benefit guarantees for substantial owners of pension plans that are assumed by the PBGC, the Court must uphold the Defendant's interpretation of the statute.**

By establishing the pension guarantee provisions of ERISA, Congress intended to "encourage the continuation of voluntary their participants." ERISA, Title IV, subtitle A, § 4002(a)(1), 88 Stat. 1004 (1974) (codified as amended at 29 U.S.C. § 1301 *et seq.*) (1988). In doing so, Congress recognized that providing a lesser level of guaranteed protection for a company's "substantial owners" would encourage those individuals to adequately fund their company's pension plans. *See* S.Rep. No. 383, 93d Cong., 2nd Sess. 83–84 (1973), U.S.Code Cong. & Admin.News, pp.

---

7. Subparagraph (B) contains the benefit restrictions for substantial owners under pension plans that have not been amended. Specifically, subparagraph (B) states:

In the case of a participant in a plan under which benefits have not been increased by reason if any plan amendments and who is covered by the plan as a substantial owner, the amount of benefits guaranteed under this section shall not exceed the product of [the thirty-year phase-in ratio and the participant's monthly benefits].
*See* 29 U.S.C. § 1322(b)(5)(C).

8. The statutory language capping a substantial owner's benefit increases under plan amendments provides:

The benefits guaranteed with respect to all such amendments shall not exceed the amount which would be determined under subpara-

graph (B) if subparagraph (B) applied. 29 U.S.C. § 1322(b)(5)(C).
Subparagraph (B) states:
In the case of a plan under which benefits have not been increased by reason of any plan amendments and who is covered by the plan as a substantial owner [the 30-year phase-in ratio applies]. 29 U.S.C. § 1322(b)(5)(B).
The Defendant reads the language in section (b)(5)(C) "shall not exceed the amount which would be determined under subparagraph (B) if subparagraph (B) applied" to mean that the amount guaranteed under increases attributable to plan amendments shall not exceed the amount available under the *original* plan.

9. Under the terms of the original 1957 plan, the Plaintiff had no vested benefits and therefore, had no guaranteed benefits under ERISA. *See* 29 U.S.C. § 1322(a).

4639, 4968. Reflecting this view, an early report on the ERISA legislation by the Senate Finance Committee stated: "To encourage at least minimum funding, the amount of benefits otherwise payable by the [PBGC] to an owner-employee . . . is to be reduced." [10] *Id.*

The guaranteed benefit cap and thirty year phase-in restriction on benefits conferred to a substantial owner by plan amendments are a result of Congressional concern that substantial owners would implement last minute amendments to increase their pension benefits knowing their company's plans to be under-funded, and that these increases would be fully insured by the PBGC. *See* Administration Recommendations to House and Senate Conferees on H.R. 2 at 46 *reprinted in* III Legislative History of ERISA, 94th Cong., 2d Sess. 5093 (Comm.Print 1976).

Furthermore, the legislative history behind ERISA illustrates that Congress considered denying substantial owners any guarantee of pension benefits. *See, e.g.,* H.R. 2, 93d Cong., 2nd Sess. § 402(b)(4) (1973); S. 1179, 93d Cong., 2nd Sess. § 405(e) (1973); S.Rep. No. 93–127, 93d Cong., 2nd Sess. § 402 (1973); H.R. 462, 93d Cong., 2nd Sess. § 202(b)(6) (1973). Therefore, an interpretation of the substantial owner restrictions which denies all benefits to an owner who was entitled to no benefits under his original plan is consistent with the legislative history of ERISA.

In addition, Congress provided that the PBGC promulgate regulations to restricting benefit increases attributable to plan amendments on an amendment-by-amendment basis. *See id.* § 1322(b)(5)(C); 29 C.F.R. § 2621.7. While these regulations are not specifically at issue in this case, this Congressional delegation of authority to the Defendant illustrates a legislative intent to give the PBGC discretion in limiting substantial owner's benefit increases. *See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782 (legislative delegation to an agency can be implicit as well as explicit).

**2. The Plaintiff's interpretation of the substantial owner benefit restrictions is erroneous because it is contrary to the clear statutory language imposing an aggregate limitation upon benefit increases attributable to pension plan amendments.**

The Plaintiff argues that the cap imposed by 29 U.S.C. § 1322(b)(5)(C) must be understood by looking at the original plan together with all amendments in place at the time of the plan's termination. Under the Plaintiff's interpretation, all these amendments should be treated as if they were included in the original Plan. *See* Pl.'s Mem. in Sup. of Summ.J. at 16–17. This interpretation would set the aggregate limit on benefit increases attributable to Plan amendments at x/30 ("x" being the number of years the owner participated in the original plan) times the participant's vested, total monthly benefits. The Plaintiff argues that this interpretation is necessary "to avoid the arbitrary and inequitable results which occur when PBGC's interpretation is applied." Pl.'s Reply Mem. at 6.

The Court does not agree. Such an interpretation is *contrary* to the plain language of ERISA. The unambiguous language of the statute mandates that the cap contained in § 1322(b)(5)(C) be derived by looking at the original, *unamended* plan. The Plaintiff's interpretation ignores the limitation imposed by the last sentence of 29 U.S.C. § 1322(b)(5)(C) which states:

The benefits guaranteed under this section with respect to all such amendments shall not exceed the amount which would be determined under subparagraph (B) if subparagraph (B) applied.

This sentence limits the benefits available under a substantial owner's pension plan benefit increases to no more than those benefits available to the substantial owner under the original, unamended plan.

If the Plaintiff's interpretation of the cap under § 1322(b)(5)(C) were accepted, the

---

**10.** This benefit reduction provision, contained in Senate Bill S. 1179, 93d Cong. 2nd Sess. (1973), mandated that a substantial owner's guaranteed pension benefits be reduced by his *pro rata* share of the assumed pension plan's funding deficiency. *See* S. Rep. No. 383, 93d Cong., 2nd Sess. 84 (1973) U.S.Code Cong. & Admin.News, p. 4968.

aggregate limitation would be derived by looking at the plan at the time of its termination as if the benefit increases had been included in the plan all along. However, the aggregate limitation under § 1322(b)(5)(B) clearly states that it applies "[i]n the case of . . . a plan under which benefits *have not been increased by reason of any plan amendments.*" *Id.* (emphasis added). In asking this Court to interpret the aggregate increase limitation as inclusive of all plan amendments, the Plaintiff asks the Court to disregard this portion of § 1322(b)(5)(B). Such an interpretation of the aggregate amendment limitation is contrary to both the statutory language and congressional intent.[11] As discussed *supra,* Congress intended to impose significant restrictions upon a substantial owner's pension benefits, particularly those benefit increases attributable to plan amendments. Therefore, an application of the statute which denies a substantial owner benefits under certain circumstances is consistent with Congressional intent to restrict substantial owner's guaranteed benefits.[12]

## C. EVEN IF THE COURT WERE TO FIND THE STATUTORY LANGUAGE RESTRICTING A SUBSTANTIAL OWNER'S PLAN BENEFITS AMBIGUOUS, THE DEFENDANT'S INTERPRETATION WOULD NONETHELESS BE UPHELD AS IT IS A REASONABLE INTERPRETATION OF THE STATUTE.

■ The Court has found that the Defendant's interpretation of ERISA's substantial owner restrictions is consistent with the plain language of the statute. However, assuming arguendo that an ambiguity exists in the statute, the Court would nonetheless have to

reject the Plaintiff's interpretation of ERISA. When an agency interprets an ambiguous statutory provision, the second prong of *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), mandates that the Court uphold an agency's decision under that provision so long as that interpretation is a reasonable one.

As stated earlier, in enacting the pension benefit guarantees of ERISA, Congress recognized that many pension plan participants were being denied benefits after years of service due to an under-funding of pension plans that lead to their termination before the plan's participants reached the age of retirement. *See* 29 U.S.C. § 1001(a). Therefore, a primary policy goal of the legislation was to guarantee vested benefits, a goal achieved through the establishment of the defendant agency. *See* 29 U.S.C. § 1302 *et. seq.* (establishing the PBGC). At issue in this case is a statutory policy contrary to that of guaranteeing vested pension benefits, the restriction of benefits to substantial owners. In evaluating an agency's interpretation of conflicting policies committed to agency determination, the Supreme Court has stated that such determinations "'should not [be] disturb[ed] unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'" *Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783 (quoting *United States v. Shimer,* 367 U.S. 374, 382, 383, 81 S.Ct. 1554, 1560, 1561, 6 L.Ed.2d 908 (1961)). The Defendant's position denying the Plaintiff guaranteed pension benefits is consistent with Congressional intent to "encourage at least minimal funding" of pension plans by "reducing the benefit guarantees available to substan-

---

**11.** The Plaintiff argues that his interpretation of the aggregate benefit increase is logical because it keeps a substantial owner's benefit increases attributable to plan amendments from exceeding the actuarial value limitations imposed upon all benefit recipients by 29 U.S.C. § 1322(b)(3). *See* Pl.'s Mem. in Sup. of Summ.J. at 17. While such a scheme might be logical, the Court cannot disregard the clear language of the statute. Furthermore, the Plaintiff offers no evidence that Congress intended the aggregate increase limitations to relate to the actuarial value limitations,

nor is it clear that the actuarial value limitations and substantial owner restrictions are mutually exclusive.

**12.** While the Court finds that the substantial owner restrictions prevent the Plaintiff from recovering the pension benefits at issue in this case, in no way are the Plaintiff's benefits under *Rettig/Piech* class action, see *supra* note 1, at issue in this case or affected by this Court's findings.

tial owners." [13]

### III. CONCLUSION

For all of the above reasons, the Defendant's Motion for Summary Judgment shall be granted and the Plaintiff's Motion for Summary Judgment shall be denied.

---

**13.** S.Rep. No. 93–383, 93d Cong., 2nd Sess. 46 (1973), *reprinted in* II Legislative History of ERISA, 94th Cong., 2nd Sess. 5093; *see also* H.R. 2, 93d Cong., 2nd Sess. § 402(b)(4) (1973); S. 1179, 93d Cong., 2nd Sess. § 405(e) (1973); S.Rep. No. 93–127, 93d Cong., 2nd Sess. § 402 (1973); H.R. 462, 93d Cong., 2nd Sess. § 202(b)(6) (1973).